Scott Nelson, New York Legal Assistance Group This is an action under the Freedom of Information Act to require the Board of Immigration Appeals to make all of its final decisions in adjudicated cases available in an online electronic reading room. It's failed to do that with respect to thousands of opinions it has designated as non-presidential. And the result is that those opinions are available to the Board and to government attorneys, but not to those representing immigrants or other members of the public. Section 552A2 of FOIA requires agencies to make such records, among others, available online without request. That affirmative requirement is separate from the requirement of Section 552A3 that the agency make other records available upon request to a person who requests them. FOIA provides a remedy when the agency violates its obligations under the Reading Room Provision, just as it does when it violates its obligations to make records available upon request under A3. Section 552A4B creates a right of action in which a person may obtain an injunction requiring the agency to cease withholding in violation of FOIA. That provision's plain language authorizes a district court to order an agency to comply with its obligations under the Reading Room Provision by making records available in the manner required by the statute. The district court in this case instead held that the FOIA remedy is limited to orders requiring production of records to an individual requester. That remedy, which is tailored to violations of FOIA's Individual Request Provision, A3, would be ineffective to prevent withholding of records in violation of the Reading Room Provision. The statute doesn't limit a court to that remedy, however. It provides expressly that the court may enjoin withholding and, separately, that it may order production of records to the individual plaintiff. The court's reading and the government's reads that provision out of the statute, that entitlement to injunctive relief against improper withholding. The government doesn't deny that the injunctive language adds nothing to the statute under its reading. That is, the relief that's available… Could I ask you, wouldn't the opposite read the second provision out of the statute? So, in other words, I think your argument is that the injunctive authority in the first part of A4B has to include some kind of remedial authority that's greater than the second part that allows for production. Otherwise, it would be superfluous. But I guess if, under your reading, if the first part includes the authority that you're saying it does, then what would the second part do? Well, there are two answers to that, Your Honor. The first is the one given by the Ninth Circuit in the ALDF case, that production authority in itself looks more like just a retrospective one-time remedy, whereas injunctive relief is ongoing relief to compel the agency to comply with its obligations under the statute. So the two aren't necessarily entirely nested. But the second would be subsumed by the… the first one would be broader and presumably subsumed. The ongoing authority would subsume the one-time production authority, right? Well, the Ninth Circuit held otherwise. But even if that's true, the solution, if you have a statute that authorizes one and two, and two is a subset of one, is not to read one out of the statute, which renders that language completely inoperative. Excuse me, Mr. Nelson. This is Judge Lynch. Isn't it also the case that, at worst for you, it's a wash? That is to say, the language could be interpreted either way. It could be interpreted such that the second is an instantiation of the first, or that they are two separate authorities. And then you could puzzle over whether a grammatical pedant would put a comma to signify one or the other. But basically, the issue of what gets superfluous is a wash. Neither side has a very strong argument that, oh, it's clearly their way because otherwise language would be rendered surplusage, because that works for both sides. So it's ambiguous. Well, even if that's the case, Your Honor, the answer is to give effect to the broader provision, which otherwise is meaningless. Under our reading of the statute, the court can do both things. Even if it wouldn't need the language authorizing production to do it, it still can provide both forms of relief that the statute authorizes. Under the government's reading, it can only provide the second, narrower form of relief. And the Supreme Court has specifically said you can't cure superfluousness by reading out one provision from the statute altogether. But you would also then look to other interpretive signals, including the pro-disclosure purposes of FOIA, which are well established. The fact that the government concedes that A4b is the remedy for an A2 violation, but it's nonsensical to have a remedy that doesn't cure or address the violation. It doesn't actually address the form of improper withholding that the government has engaged in. Put another way, Mr. Nelson, isn't the best argument for you that the government's argument suggests that the agency is required to do something by A2? There is explicit authority for a person to bring a private action to enforce A2. And without saying so explicitly anywhere, somehow implicitly the remedy is to do something quite different than to make the agency comply with A2, but is instead the rather strange idea that you can get your own private copy and so could I and so could anyone else. And everyone who would be benefited by A2 has to bring their own individual action and get their own private copy of all of these records. And the government will produce them to each party individually rather than do what the statute says it's supposed to do. That seems like a very strange outcome, doesn't it? Yes, that's right. And the striking thing about the government's brief is in amongst its arguments, nowhere does it actually offer a reason why Congress would have written the statute in that manner. That is to say, why Congress, having required a reading room and authorized a remedy for a violation, would take that very strange step of giving the agency, in effect, the choice of just not complying with the statute. Let me ask you this. Why don't we look at the statute and say that it has within it its own remedy? That is to say, if an agency does not, let's say the BIA, does not include its non-precedential opinions in its reading room, it can't rely on it. Well, that's in effect a safety valve to prevent unfairness to parties when the agency has violated the obligation. But it doesn't detract from the fact that the agency still is obligated to comply with that statute. And even the government doesn't argue that that's the exclusive remedy. All we are talking about is remedies. And there is a consequence built into the statute. The statute contemplates that agencies may not do this. For example, it may be unwieldy. It may be so burdensome that they can't do it, in which case they can't fight to that. Well, Your Honor, two responses to that. First, Section 552A4B, the government admits, is a remedy for an A2 violation in addition to the sanction of not being able to use materials against an individual. And second, there's no reason to think that it's more unwieldy for the government to produce all the records that it was supposed to make public online to an individual requester. In fact, it's a lot more difficult to go through and then provide materials to an individual than it is just once you've reviewed them, determined that they're releasable, to post them online. That's actually the reason why the statute provides in the reading room provision that frequently requested records are to be posted online to save everybody the trouble of going through the individual request procedure. Under the government's view of the statute, the burden on the agency is maximized because everybody, you, me, New York Legal Assistance Group, everybody in the country could bring an action against the government to require it to produce all these records to them personally. What has to be done? You referred to what has to be done to make an unreported decision releasable. What has to be done? There may be some exempt information in some releasable opinions. If there's a potential of causing a danger to an individual, there might be the possibility of redacting names. Yes. Well, for example, if someone is being returned to their native country and they have stated truthfully or falsely that that government practices torture or violates human rights, somebody could truly worry that upon return they would be persecuted even if they were not persecuted before they left. That's right, but that doesn't go to whether the online remedy is available versus production to the individual requester. Absolutely. That's a burden that the government bears either way, whichever the remedy is. Mr. Nelson, I'm sure that if we reverse here and send this back to the district court, I'm sure that you will ask to have everything put online yesterday, but you're asking for injunctive relief. Doesn't that imply that there would be equitable considerations that would go into the question of burden, that that would be a defense that the government could raise at the stage of implementing the remedy, and that some sort of timetable for doing this might well be appropriate and that that would be something that would be worked out in the course of devising a remedy? It would be a kind of with all deliberate speed situation rather than necessarily being the case that the government has to comply forthwith. Yes, and even in our request and in our briefing in the district court and in this court, we actually didn't ask for it to be done yesterday. We asked that in our opening request to the agency itself that they work with us to develop a reasonable timeframe. But I don't see how – you're saying you won't ask for it yesterday, but if you spent – if they had to spend one hour checking out each of the 700,000 opinions that you say should go online, that would take, by my rough calculation, five employees about 100 years. Now, that's not all due deliberate speed. That may be unfeasible, and if it's unfeasible, then why – I mean, if it's feasible or unfeasible, and I don't know, but it may be unfeasible, why wouldn't we just remand to the district court? Well, feasibility goes to not whether we have a right of action to begin with, but to the remedy and potentially to whether there's been a violation of the reading room provision. Correct. But again – Because if there's been no violation, if there's been no violation of the reading room provision, why would we direct that the court come up with a remedy? Well, what we're asking you to do at this point is merely to direct that we have a right of action to request that the agency be ordered to comply with the reading room provision if it has violated it. Whereas what the district court held was we're out of court in any claim of a reading room violation. All we can get is individual production. And, of course, individual production would involve all of the same questions of burden and remedy that Your Honor has described, as well as timing, because it's not the posting versus the individual production. That is what takes time. It's the review, which will have to happen even if the remedy is limited to production to the requester. Okay. Thank you, Mr. Nelson. You've reserved three minutes for rebuttal. Why don't we hear from the government next? Thank you. Mr. Torrence? Good morning, Your Honor. May it please the court, Benjamin Torrence from the U.S. Attorney's Office of the District of New York on behalf of the Board of Immigration Appeals. FOIA, the scheme it sets out for access to records is comprehensive. It specifies the agency's obligations to make the records available, and it also provides for how a member of the public can seek to make the agency disclose those records, mainly by making a request to the agency, which then triggers the deadlines and processes. And then if the requester is still dissatisfied, FOIA provides for judicial review. That comprehensive scheme is the mechanism, the sole mechanism that Congress provided to members of the public to vindicate the access rights that FOIA provides. But importantly for this case, the process for both administrative and judicial review focuses on the requester. If the agency responds to a request by accepting that the records should be disclosed, A.6.C. of the statute provides that the records shall be made promptly available to such person making such requests. And then if the agency decides not to disclose and the requester files a complaint in the district court, that court has jurisdiction to enjoin the agency from withholding agency records and to order the production of agency records improperly withheld from the complainant. Excuse me, Mr. Torrence, even taking only the second phrase, this is Judge Lynch, by the way, even taking only the second part of that end set of infinitives, to make the records available to the requester, what that means depends on what the violation is, doesn't it? I mean, for example, take A.1. If the agency for some reason just decided not to publish its official regulations in the Federal Register and somebody brought an action to make them do that, the way the agency would comply and make those records available to the requester is to put them in the Federal Register, isn't it? It would be very strange to say that I get my copy of this, and so I know what rules bind me, but nobody else does. When the statute explicitly requires the agency to do something different. So I think there are a couple of objections to that line of reasoning. One is that I think it contradicts the language of the statute that says make available to the person making such a request. That does not suggest a broader right of access. Second, to the extent that the question is premised on the idea that whatever is to be published, either in the electronic reading or the Federal Register, is to be binding, it won't be. As the D.C. Circuit pointed out, and as Judge Jacobs suggested a few moments ago, it won't be binding. And Congress has provided that, what the D.C. Circuit called a powerful incentive for them, for the agency. Well, I think, first of all, we do dispute that the BIA does not comply. The district court did not reach the merits in the parties that… Well, wait, didn't they, but hasn't the other side cited specific examples of where it has? They have cited, without really naming them, a few, I would respectfully say vaguely described examples where they allege that that has happened. But I would say that if the BIA were to rely solely on unpublished decisions, I think that that would be fertile grounds for a petition for review, which, of course, the immigrant has if the BIA orders removal. If the BIA were to say that, contrary to its own regulations, contrary to its own precedential case law, that this unpublished decision somehow binds and is to be sprung on an immigrant surprisingly, then I think that a court of appeals considering a petition for review would have a lot to think about in that situation. Mr. Torrence, can you suggest any reason why Congress would prefer that the remedy for the plaintiff in this case is that you go through all of the effort that you would need to do in order to put something online and then produce those records to that plaintiff and thus require everybody else who would like to see those records to file a similar lawsuit and then get their own copy, which would then, I guess, 100 years later after you've gone through this burdensome process that Judge Jacobs refers to, eventually, the second time, it wouldn't be as hard to produce the records to the second person and then the third and the fourth and the fifth, but they have to litigate to get their own private copy. Is there anything at all that you can suggest that makes that seem like a rational thing for Congress to require? I think that there is a rational reason. I think it's rooted in the same concerns that led Congress to provide the remedy that it did provide, namely, that the agency will not be bound or cannot rely. And I think that goes back to the purpose of these provisions, A1 and A2, as well, as the Supreme Court in Sears recognized the purpose underlying those is to prevent agencies from promulgating secret law that they know of and that binds the public but that nobody else knows about. So, the agency, what Congress has done in A1 and A2 is give the agency some measure of discretion to decide what it will be bound by. And that gets balanced against the concerns of burden. As was pointed out a few moments ago, there's hundreds of thousands. The BIA issues, I think, the declaration in the Joint Appendix, beginning on page 19, says the BIA issues approximately 135 of these decisions a day. But am I reading your brief incorrectly in thinking that you concede that if NILAG wanted to force you to, you would have to, under the statute, undertake that burden so as to provide these records to it? Well, there are some cases, and again, this goes to the merits that the district court didn't reach, but we did raise in the district court a line of cases that say that an overly burdensome request need not be reached. Sure, but that doesn't answer my problem because the same rationale is available if they have a remedy to require you to make it available to everyone. In either case, if it's too burdensome to be reasonable, it isn't going to happen. In either case, if it is burdensome but not too burdensome to do at all, the district court would have discretion to craft an appropriate remedy. So why is the one remedy available, the remedy that is a private party that is well-financed, Westlaw, let's say, could ask for these documents, force you to provide at least some of them for sure, maybe all of them, depending on what the district court decides in terms of burden, and then charge the public for access? And all of that is contemplated by the statute, but it does not contemplate a remedy by which the agency is required within the limits of burdensomeness and reasonableness to do what the statute requires. What sense does that make is point one, and point two, you're not asking us to enforce plain language of a statute that may or may not seem absurd. You're asking us to infer that Congress did this from a linguistic construction that is plainly amenable to either interpretation. On the second point, obviously, I have to concede there's a square circuit split here, and two judges of the Ninth Circuit have accepted that reading that the plaintiff's offering. So whether it's amenable to two readings, I do agree that it is. I think that the D.C. Circuit's reading, of course, is better, that if Congress had meant to suggest two separate remedies, the more natural conjunction would have been or instead of and, and that the D.C. Circuit read those two clauses together. The Ninth Circuit says it didn't consider the language at all. That's not correct. They did consider the language. They read them together. It's the more natural reading of the statute that it's one form of relief where the second clause specifies what is meant by the first clause. Again, a natural reading, if I were to say something like, you know, do me a favor and hand me that pen. That's not two separate things I'm asking for. The second clause narrows and identifies what is meant by the first clause, and that's how the D.C. Circuit read it. I think that's the better reading, but I do understand that it can be read at least two different ways. In terms of the first question, the burden, I certainly understand that the agency would have, if the district court were to order the production of these hundreds of thousands of opinions, that, yes, there would be a significant burden on the agency. But in either case, by the way, the agency, the district court wouldn't have to order that, would it? If the plaintiff's reading is correct, there is an authorization for injunctive relief, an equitable process. Whether it's production to NILAG or putting things in a reading room, wouldn't the district court have the ability to balance the burdens against the benefits, to think in terms of, you know, every lawyer knows that more recent cases are probably more informative than ones from 20 years ago. So let's start with a year's worth. Let's start with an ongoing obligation to put things in a reading room. Let's see how burdensome it is and then proceed gradually to move in a direction of full disclosure. I just don't see why the potential burden affects how we should read the question of whether the remedy is available at all. Well, perhaps I can try to turn that around. So just to actually answer the question forthrightly, if the plaintiff's and the Ninth Circuit's reading is correct and the district court has that authority, then yes, I do agree that the district court could shape the remedy in that way. But I might suggest that if, you know, we're talking about an electronic reading room, we're talking about a website that's designed to shed transparency on the agency's action here and provide the public with knowledge of the important things that the agency is doing. It doesn't really make a lot of sense that Congress would want literally over a million pages of these decisions, hundreds a day going up there, clogging the electronic reading room with all these things that the BIA expressly itself says it will not rely on. I understand that the plaintiffs are saying that they do sometimes, and that may have to be litigated later. But it doesn't make a lot of sense for Congress to want the agency to have to post all that stuff when its aim is to prevent the agency from promulgating secret law. Isn't that what it said in A2 is the obligation? Well, we disagree on the merits. I mean, we – and again, in the district court, we cited authority that says when A2 says final opinions or opinions issued in the adjudication of cases, that that means binding authority. Again, that's not before the court now. It hasn't been briefed. The district court will have to read that. Well, if it's final, it's certainly going to be binding on the person who has lost and is going to be leaving. It is binding. It is. The authority we cited in the district court suggested that it's binding in the sense that it's precedential, that it makes a ruling decision for future cases. This is Judge Jacobs. Let me ask you this. I mean, the point has been made that some of these nonpresidential opinions have been cited. Now, when they're cited, I take it you give a copy of it to your adversary? Again, I only saw in the declaration submitted by the plaintiffs in this case a reference to a case that was not identified, so I don't know specifically what happened in that case. As I recall the declarations, they cited one case where that had happened, and so I don't know that I can – again, I think this would be litigated if there were more factual development needed. But I don't believe that the BIA's general practice is to do that. In the days before the federal appendix, the United States Attorney's Office logged and kept track of all nonpresidential summary orders because it was useful to lawyers, even if they couldn't cite the summary dispositions, to know what the pattern of application of a particular rule was. And the government had access to that information because it was a repeat player and was in all the cases. Individual defense lawyers didn't have access to that information, but you can't deny that that is very useful information for lawyers to have who are practitioners in a particular area, right? I certainly think it would be useful. On the flip side of that, though, of course, both the BIA and prior to the amendments to the Federal Rules of Health, the teachers' discord prevented anyone from citing those cases. So while, yes, keying the pattern is useful, the utility is certainly limited. But I'm not an immigration practitioner. I cannot deny that it can be useful. But again, I think that when Congress is putting an obligation on an agency to promulgate these opinions to the public at large and make them widely available, the more sensible thing for Congress to want to do is to post the presidential. And, Mr. Torrence, I have one other question about what makes sense and what doesn't. Because your arguments about burden are well tailored, it seems to me, to the BIA, which is an agency that produces enormous records, enormous volume of decisions. There are, of course, other agencies. Do you have any idea, for example, about the Department of Agriculture body that was at issue in the Ninth Circuit case? How many decisions it issued in a year? I don't have numbers on that. I do know that the posture of that case was that the agency at issue, some agency, had been posting that database up until I believe it was 2017, and then made a decision to take it down. So I don't think that we would possibly be able to say in that case it was not feasible. But your argument here, the argument that A4 simply does not authorize this kind of relief, would apply as well to an agency that made only a few decisions a year as it does to the BIA, right? And I think that, again, Congress specified what the sanctions for the agency would be, that it would no longer be able to rely on those, it would no longer be able to use them as precedent. Let me ask you this. If, as you say, the sanctions are not posting unpublished opinions, is that they're not published and therefore they can't be relied upon, what assurance does that give that the agency is not engaging in secret law? That is to say that the agency is doing one thing in the opinions that it is not publishing while declaring a different policy in the opinions that it is publishing. Well, I think to take the BIA as an example, the petition for review process would ensure against that. If the BIA has precedent that they do X and it's routinely doing Y, then I think this court would not hesitate long in reversing those or granting the petition for review and making the BIA go back and do it again. So I think that there are other mechanisms that ensure against relying on the secret law that somehow it's not publishing. And that would be true for all other agencies whose final opinions are subject to APA review? It would. I think I would just say unless there are further questions, we ask the court to affirm. Thank you, Mr. Torrence. Mr. Nelson, you've reserved three minutes for rebuttal. Thanks. I'd like to make three points. First, with respect to the government's reliance on the administrative remedy provision C-1, that provision actually lines up exactly with our reading of A-2 and with the right of action. C-1 says when the agency chooses to comply with a request that it comply with its reading room obligation under A-2, it shall make the records available to the person. Now, A-2 itself uses those same words, make available, in describing the reading room provision. So the administrative remedy, when the agency chooses to comply with the request, is to make the records available in the manner in which the individual is seeking them. That is, make them available to the individual in a reading room. That's the same remedy that we're asking the court to provide via its injunctive powers,  Second, with respect to the idea that A-2 is limited to a provision that says the agency can't rely on things that it doesn't publish, that actually doesn't line up with the way the statute is written, which says the agency shall make these things available in the reading room. If the statute were actually intended just to say the agency may not rely on things that it doesn't put in a reading room, it could stop right there. It wouldn't start with the affirmative obligation. And that affirmative obligation also applies to some categories of things for which the sanction of being prohibited from relying on them doesn't even make any sense, like frequently requested records or administrative staff manuals. Those are not things where that remedy even has any application. So if that's all A-2 means, half of the things that A-2 requires the agency to put in its reading room don't have any remedy at all. And further, again, the idea that the sanction is the only remedy available doesn't even fit with the government's own reading of the statute, which concedes that the FOIA right of action is available for an A-2 violation, but just seeks to limit its relief. And finally, that remedy doesn't do any good where the problem is not just that the agency is relying on something that wasn't published, where its manner of compliance usually is to provide a copy, which provides the fig leaf of not using something against the person for which they haven't received notice. But the problem is that the immigrants and their lawyers don't have access to the thousands of other opinions that might be out there that might contradict the one that the agency is now citing against them. And then finally, as to the question whether these unpublished opinions are, in fact, opinions under A-2, that's a merits question. We'd love to have the opportunity to litigate that, but it's premature right now because we're out of court given the district court's ruling that even if those are opinions, and even if they've been withheld in violation of A-2, we can't get a remedy of ordering compliance with A-2. That's the issue that's before the court now, and the question whether these unpublished opinions fall within A-2 is the one that we'd like to get to once this court rules that we actually have a right of action to begin with. Unless there are any further questions, I will conclude with that. Thank you. Thank you, counsel. Well argued. We'll take the case under advisement.